(637 P.2d 444)

No. 52,697

In the Matter of the Estate of Joseph H. Brecklein, Deceased.

LEOLA BERKLEY, *Appellant,* v. JAMES BRECKLEIN, *Appellee.*

Opinion filed December 3, 1981.

*John Anderson, Jr.,* of Anderson, Granger, Nagels & Lastelic, of Overland Park, and *James Yates,* of Kansas City, for the appellant.

*William K. Waugh, III,* of Lathrop, Koontz, Righter, Clagett & Norquist, of Kansas City, Missouri, and *Larry Winn, III,* of Bennett, Lytle, Wetzler, Winn & Martin, of Prairie Village, for the appellee.

Before JUSTICE PRAGER, presiding, ABBOTT, J., and HARMAN, C.J. Retired, assigned.

PRAGER, J.: This is a controversy which arose during the administration of an estate, involving the interpretation of a will and the refusal of the district court to appoint a designated testamentary trustee. The testator was Joseph H. Brecklein, who died on June 27, 1979. The adversary parties in the case are Leola Berkley, the appellant, who received a specific bequest under the will and was named trustee of the residual trust, and James

Brecklein, the appellee, the grandson of the testator who was a beneficiary under the residual trust.

The basic facts in the case are not really in dispute and are as follows: The testator, Joseph H. Brecklein, was a resident of Johnson County, Kansas. Leola Berkley was his long-time friend and companion. She lives in Tonganoxie on a farm given to her by the testator some twenty-one years ago. She is 73 years of age, and, during the last three or four years of his life, had assisted him in his business affairs. Suffice it to say, Joseph H. Brecklein and Leola Berkley had a very close relationship which had flourished for a number of years.

Joseph H. Brecklein's Last Will and Testament was admitted to probate in Johnson County on August 21, 1979. The will provided in part as follows:

"LAST WILL AND TESTAMENT
- of -
"JOSEPH H. BRECKLEIN

"I, JOSEPH H. BRECKLEIN, being of sound mind and memory, and not under any restraint, of lawful age, but mindful of the uncertainties of life and the certainty of death, and desiring to dispose of my worldly goods in the best possible and most appropriate fashion, and being now a resident of Shawnee, Johnson County, Kansas, do hereby make and declare this my Last Will and Testament, hereby revoking any and all former Wills and Codicils by me at any time made.

. . . .

"ARTICLE I.

"I direct the payment of all my lawful debts and expenses of my last illness and funeral as soon as practicable after my decease.

"ARTICLE II.

"*I give and bequeath unto my beloved friend, LEOLA BERKLEY,* and one who has helped me steadfastly through the trials and tribulations of the later years of my marriage and through my serious physical handicap that I have as a result of my arthritic condition, *any furniture, household effects or belongings that she cares to take from my home at 6220 High Drive, Shawnee, Kansas, or wherever I may reside at the time of my death,* and fifteen hundred (1,500) shares of Phillips Petroleum Company common stock, of [or] the equivalent thereof as of the date of the making of this Will, if said stock is not in my estate at the time of my death.

"ARTICLE III.

"All the rest, residue and remainder of my estate, of which I may die seized, whether real, personal or mixed, and wherever the same may be situate, I give, devise and bequeath to LEOLA BERKLEY in trust, for the benefit of my grandsons, JOHN BRECKLEIN and JAMES BRECKLEIN, who now reside at 401 Fontaine Street, Walnut Ridge, Arkansas 72476, and direct that the said trustee shall apportion the corpus of said trust one-half (½) to each of my said grandsons and shall disburse the same to them in her sole discretion over a period of ten (10) years from the date of my death, and at the termination of said period of

ten (10) years any remaining balance in the corpus of the trust shall then be paid over to my said grandsons above named. I further direct that my trustee shall have full discretion to manage said trust, and to invest and reinvest the same at her sole direction.

"In the event either of my beloved grandsons above named would predecease me, it is my will that his share shall go to the surviving grandson above named." (Emphasis supplied.)

Articles IV, V, and VI of the will provided for the appointment of the testator's cousin, Olga Bailey, as executrix and contained certain directions to her which are not pertinent to the issues in this case. The will was properly subscribed and witnessed.

Since the filing of the order admitting the will to probate, the testator's other grandson, John Brecklein, has died. The estate involves real estate and personal holdings worth several million dollars. Following the appointment of the executrix, there developed a running controversy between Leola Berkley and James Brecklein. It appears that during the two years prior to the death of the testator, he had transferred to Leola Berkley the sum of $280,000 in cash which he instructed her to place in her safety deposit box. Leola Berkley claims that this was a gift to her from her friend, Joseph. James Brecklein claims that this was not a gift at all and that the cash should be restored as part of the inventory of the estate. In the course of the administration of the estate, the district court appointed a special administrator to make inquiry into the alleged gift. That is a controversy which will have to be determined in other proceedings.

Leola Berkley and James Brecklein also had a dispute about certain items of personal property which were removed from the estate including a chandelier which Leola removed from the home of the testator to her own home. A claim for the chandelier is not involved in the case now before us.

Leola Berkley and James Brecklein also had a controversy over the construction of Article II of the last will and testament which is set forth verbatim above. The controversy was over certain gold and silver coins and Krugerrands (1 oz. South African gold coins), which the testator kept at his home in Johnson County until they were removed just prior to his death when he was in the hospital. The evidence showed that the decedent kept gold and silver in buckets, in various places about the house. Some of the coins were hidden in flower pots, and other coins were hidden under sawdust. The two rolls of South African Krugerrands were kept in

rolls in concealed locations. None of the coins were displayed in a manner which indicated that they were collected as a hobby by the testator. Leola Berkley took the position that she was entitled to these coins under the provision of Article II in which she was to receive "any furniture, household effects or belongings that she cares to take from my home at 6220 High Drive, Shawnee, Kansas." She argues that the coins were "belongings" within that provision. To the contrary, James Brecklein maintains that the coins were collected by the testator solely for investment purposes and that they did not fall in the category of "belongings" under the bequest in Article II. This issue was presented to the district court which found that the coins did not fall within the category of belongings as contained in the specific bequest to Leola Berkley under Article II of the will, and, hence, were a part of the residual trust estate created for the benefit of the testator's grandsons under Article III of the will. We will discuss this issue later in the course of the opinion.

The other major controversy between Leola Berkley and James Brecklein was over her appointment as testamentary trustee under Article III. In substance, it directed that Leola Berkley be appointed as trustee of the trust for the benefit of the testator's two grandsons, John Brecklein and James Brecklein. Leola was to serve as trustee for a period of ten years following the testator's death during which period she should distribute the funds to the beneficiaries in her sole discretion. At the termination of the ten-year period, the corpus of the trust is to be paid to the beneficiaries. John Brecklein is now deceased and is not involved in this litigation. The controversy arose here because appellee maintains that, in view of the controversies between Leola Berkley and himself over various assets of the estate, she is not a proper person to be appointed as trustee. Leola Berkley, on the other hand, denies any hostility toward James Brecklein and contends that she is ready, willing, and able to serve as trustee and will treat James Brecklein fairly and without animosity. The trial judge concluded that Leola Berkley was not a proper person to appoint as trustee, refused to appoint her as such, and, in lieu thereof, appointed Patrons State Bank and Trust Company of Olathe as interim trustee.

Leola Berkley has appealed to this court the judgment of the district court on two phases of the litigation:

(1) The decision of the district court holding that the coins did not constitute "belongings" so as to be a part of the bequest to Leola Berkley under Article II of the will, and

(2) The finding of the district court that Leola Berkley was not a suitable person to appoint as trustee of the testamentary trust and its refusal to appoint her as trustee.

We will first consider the issue involving the coins. Article II of Joseph H. Brecklein's will provided in substance that he bequeathed to his friend, Leola Berkley, "any furniture, household effects or belongings that she cares to take from my home at 6220 High Drive, Shawnee, Kansas, or wherever I may reside at the time of my death, and fifteen hundred (1,500) shares of Phillips Petroleum Company common stock, or the equivalent thereof as of the date of the making of this Will, if said stock is not in my estate at the time of my death." When the controversy arose about the coins, Leola Berkley appeared in court and proffered the testimony of Doreen Benton, legal secretary for David W. Carson, the attorney who served as scrivener of the will. On the stand, Benton testified that, prior to the formal drafting of the will, there was a conference in Mr. Carson's office including Mr. Joseph H. Brecklein, Leola Berkley, Mr. Carson, and herself. She testified that she typed the will. She was then asked by counsel for Leola Berkley to relate the instructions that Joseph Brecklein gave to Mr. Carson about the bequests to Leola Berkley prior to the typing of the will. Objection to the question was made and the trial court sustained the objection. Counsel for Leola Berkley then made an offer of proof: "If the witness were allowed to answer she would testify that Mr. Brecklein told Mr. Carson that he wanted . . . Mrs. Berkley to have anything she wanted out of the house. And the word 'belongings' was used to convey the instruction that Mr. Brecklein had given to Mr. Carson." Leola Berkley would have testified that, before the will was drawn, Mr. Brecklein instructed Mr. Carson that he wanted Leola Berkley to have anything she wanted from the house. On objection, the trial court refused to admit her testimony also. The trial court took the position that the construction of the will was strictly a question of law which could be determined from the will itself and that the proffered testimony was, therefore, inadmissible. Also, at a later hearing, new facts developed as to the location of the coins at the time of Joseph H. Brecklein's death.

The testator had been in the hospital and was concerned that intruders might enter the house and steal his property. At testator's suggestion and request, Leola Berkley removed the coins from the house and took them to her home. The coins were thus not located at the testator's home at the time of his death. The appellee maintains that the location of the coins at a place away from the home at the time of the testator's death excluded them from the operation of Article II of the will.

It is the position of Leola Berkley that the term "belongings," as used in Article II of the will, was ambiguous and, therefore, extrinsic evidence in the form of testimony from Ms. Benton and Leola Berkley was admissible to show the intention of Joseph H. Brecklein to include the various coins in the bequest of "belongings" to Leola Berkley under Article II. She further contends that the *temporary* removal of the coins from the home for safekeeping did not eliminate them from the bequest to Leola Berkley, and that the trial court erred in refusing to make certain findings of fact that the coins were removed only temporarily for safekeeping. The determination of these issues requires us to construe the Last Will and Testament of Joseph H. Brecklein.

At the outset it would be helpful to consider some of the basic principles of law to be applied in construing a will and in determining the admissibility of extrinsic evidence to show the intention of the testator. In *Russell v. Estate of Russell,* 216 Kan. 730, 534 P.2d 261 (1975), we find the following statement:

"In construing a will courts must (*a*) arrive at the intention of the testator from an examination of the whole instrument, if consistent with rules of law, giving . . . every single provision thereof a practicable operative effect, (*b*) uphold it if possible, (*c*) avoid any interpretation resulting in intestacy when possible, (*d*) give supreme importance to the intention of the testator, and (*e*) when the language found in such instrument is clearly and unequivocally expressed determine the intent and purpose of the testator without resort to rules of judicial construction applicable to the interpretation of an instrument which is uncertain, indefinite and ambiguous in its terms. (Following *In re Estate of Porter,* 164 Kan. 92, 187 P.2d 520.)" Syl. ¶ 1.

*Schauf v. Thomas,* 209 Kan. 592, 498 P.2d 256 (1972), also involved the rules for construing a will and the admissibility of extrinsic evidence to show the intention of the testator. The syllabi of *Schauf* state as follows:

1. "In determining the force and effect to be given the terms of a will, the court's first duty is to survey the instrument in its entirety and ascertain whether

its language is so indefinite and uncertain as to require the employment of rules of judicial construction. Where, from an analysis of the entire instrument, no ambiguity or uncertainty is to be found in its language, the intention of the testator being clearly and unequivocally expressed, there is no occasion to employ rules of judicial construction and the will must be enforced in accordance with its terms and conditions.

2. "When a court is called upon to determine the force and effect to be given the terms of a will, the cardinal rule of construction to which all other rules are subordinate is that the intention of the testator as garnered from all parts of the will is to be given effect, and that doubtful or inaccurate expressions in the will shall not override the obvious intention of the testator. In construing a will the court must put itself as nearly as possible in the situation of the testator when he made the will, and from a consideration of that situation and from the language used in every part of the will, determine as best it can the purpose of the testator and the intentions he endeavored to convey by the language used.

3. "Extrinsic evidence attempting to show the real intention of the testator under the facts and circumstances must be distinguished from evidence admitted to show the 'surrounding facts and circumstances' at the time the will was executed. Evidence which tends to show the situation of the testator at the time the will was executed, the nature of his business, the extent of his property, his relations with his family or named beneficiaries, may be received if it assists in identifying property or beneficiaries, or to clarify language used in the will, but not to change the will.

4. "Where there are definite and unambiguous expressions in a will, other expressions that are capable of more than one meaning must be construed, if possible, so as to harmonize them with the plain provisions. To ascertain the intention of the testator and the extent and character of the bequests and devises of his will, all provisions of the will must be read and construed together, and one provision must not be given controlling significance by ignoring other provisions of the will."

In *Theimer v. Crawford,* 224 Kan. 586, 582 P.2d 1151 (1978), the rule is stated that when the meaning of language employed in a will is challenged, the first duty of a court, either trial or appellate, is to determine whether the will is ambiguous. The critical test in determining whether a will is ambiguous is whether the intention of the testator can be gathered from the four corners of the instrument itself. If the testamentary intention can be gleaned from the face of the will, ambiguity does not exist; otherwise it does. In *In re Estate of Sowers,* 1 Kan. App. 2d 675, 574 P.2d 224 (1977), the rule is stated that the intent of the testator as expressed in the entire will is paramount. Where a will is not ambiguous and can be carried into effect without extrinsic evidence of intention, such evidence is inadmissible.

As noted above, one of the basic issues involved in this case is whether the term "belongings," as used in Article II of the will

should be construed to include the coins and Krugerrands. This question is the subject of a comprehensive annotation in 30 A.L.R.3d 797, which annotation is entitled, "What Passes Under Terms 'Personal Belongings,' 'Belongings,' 'Personal Effects,' or 'Effects' in Will." The annotation contains many cases construing the meaning of those terms. The annotation points out that an examination of the cases demonstrates that no fixed rule of construction can be laid down to fit all cases because of the difference in wording of individual wills and the duty imposed upon courts to construe the language of each will, as far as possible, in accordance with the testamentary plan or scheme of the testator as explained by him in his will. From an analysis of these cases it is obvious that the word "belongings" or "personal belongings" or "effects" or "personal effects" has been construed either broadly or narrowly depending upon the language contained in the particular will and the relationship of the bequest to the testamentary plan or scheme of the testator. We note, for example, that, where such words are used in the *residuary* clause, a broad interpretation will be given to the words to avoid a partial intestacy. In that situation, the word "belongings" has been broadly interpreted to include practically anything, including real estate. There are many cases in Kansas which hold that a particular will should be construed to avoid an intestacy where it is reasonably possible to do so. See, for example, *Russell v. Estate of Russell,* 216 Kan. 730; *In re Estate of Schnack,* 155 Kan. 861, 130 P.2d 591 (1942); *In re Brown,* 119 Kan. 402, 239 Pac. 747 (1925); *Johnson v. White,* 76 Kan. 159, 90 Pac. 810 (1907). Thus wills which devise and bequeath all of the "belongings" of the testator to a single named person almost universally are construed to include *any* property owned by the decedent at his death. *Ford's Administrator v. Wade's Administrator,* 242 Ky. 18, 45 S.W.2d 818 (1931).

A different and more restrictive interpretation of the word "belongings" is applied, however, in cases where a broad interpretation of the term would frustrate the testamentary plan or scheme of the particular testator. See, for example, *Estate of Johnson,* 5 Cal. App. 3d 173, 84 Cal. Rptr. 914 (1970). In a number of cases courts, in considering the question of what passes under the terms "belongings" or "personal effects" in a will, have applied the rule of ejusdem generis, namely, that where certain things are enumerated and a more general description is coupled

with the enumeration, the general expressions are understood to cover only things of the same class as those enumerated. Applying this rule in cases where the term "belongings" is used coupled with other more specific words such as furniture, household goods, wearing apparel, and the like, the courts have construed the word "belongings" to include only items personal to the testator and not such items as bank accounts, certificates of deposit, money, or accumulations of coins.

We have no cases in Kansas construing the word "belongings" as used in a will. We do note, however, that in *In re Estate of Reitz,* 213 Kan. 534, 516 P.2d 909 (1973), the Supreme Court held that, when used in a will, the unqualified term "personal effects" ordinarily means such tangible personal property as is worn or carried about the person or has some intimate relation to the person. Further, the court held that, in the absence of some expressed intention, a bequest of the testator's "personal effects" does not include a certificate of deposit.

With these basic principles in mind, we turn now to the particular factual cicumstances presented in this case. A resolution of the issue first requires us to determine whether the intention of the testator can be gathered from the four corners of the instrument itself. If it can, ambiguity does not exist and extrinsic evidence of the testator's intent is not admissible. The trial court considered the provisions of the will and held that the bequest under Article II did not include coins concealed in buckets or flower pots or other places around the house and which obviously were held for purposes of investment. We agree.

The trial court, in its memorandum opinion, observed that the testamentary plan of the decedent was a simple one: a specific legacy and a residuary trust with two beneficiaries for a specific ten-year period, with the corpus of the estate to be delivered to the beneficiaries at the end of that period. Under Article II, the testator, in substance, devised to his beloved friend, Leola Berkley, "any furniture, household effects or belongings *that she cares to take from my home* at 6220 High Drive, Shawnee, Kansas, or wherever I may reside at the time of my death, and fifteen hundred (1,500) shares of Phillips Petroleum Company common stock, or the equivalent thereof as of the date of the making of this Will, if said stock is not in my estate at the time of my death." It seems to us that it is highly unlikely that a testator, in making a

bequest of such "belongings" as the legatee "cares to take from my home," would be referring to a bucket full of gold coins. How could *any* legatee not care to take a bucket full of gold coins from the testator's home? Also, we are convinced that the use of the specific words, "furniture," and "household effects," along with "belongings" expresses a clear intention that the testator is referring to personal items which the testator wanted a personal friend to have in remembrance of the testator. Gold and silver coins stashed away in concealed places about the house do not logically fall in that capacity.

It is also important to note that Article II makes a specific bequest of 1500 Phillips Petroleum Company common stock *or the equivalent thereof as of the date of the making of the will,* if that stock is not in the testator's estate at the time of his death. The testator, in effect, wanted Leola Berkley to have, in addition to the personal items mentioned, assets from the estate of the value of 1500 shares of Phillips Petroleum stocks as of the date the will was executed. If the testator had wanted Leola Berkley to have additional *investment* assets, he could have so provided, but this he did not do. Thus, the expressed intention and plan of the testator was for Leola Berkley to have certain specific shares of corporate stock *or assets of equivalent value,* and all of the rest of the corpus of his estate was to be held in trust for his grandsons. We do not believe it would be reasonable to conclude that the testator intended to bequeath to Leola Berkley, in addition, coins and Krugerrands of a value in excess of $20,000. Such a construction would, in our judgment, defeat the expressed testamentary plan and scheme of the testator.

We have also concluded that the testimony of the scrivener's secretary and of Leola Berkley to the effect that the testator intended for her to have *anything* she wanted in the house contradicted the expressed intention of Joseph H. Brecklein as contained in the four corners of his will and was not admissible. It is important to note that, during the course of the hearing, Leola Berkley testified that, at the time of the death of Joseph H. Brecklein, there was a cabinet in his home which contained some of his corporate stocks held for investment purposes. It could not reasonably be argued that the testator intended Leola Berkley to receive additional shares of stock, other than the Phillips stock mentioned in Article II of the will, simply because the stock was

in the house. We thus hold that the trial court was not in error in its judgment that Leola Berkley was not entitled to the coins and Krugerrands as "belongings" of the testator. In view of our holding, it is unnecessary for us to determine whether the removal of the coins from the house for safekeeping at testator's request, when he was hospitalized, would have any effect in the case.

We turn now to the second basic point raised in the case: That the district court erred in finding that Leola Berkley was not a suitable person to appoint as trustee. The essential factual circumstances in the case and the various controversies between Leola Berkley and James Brecklein are summarized above. We do not believe that setting forth additional facts would serve any useful purpose.

The Supreme Court has recognized that it is a drastic action to remove a trustee and it should only be done in extreme circumstances. *Jennings v. Murdock,* 220 Kan. 182, 553 P.2d 846 (1976). The law is clear, however, that a district court may refuse to appoint or may remove a trustee under exceptional circumstances. Whether a trustee should not be appointed or removed is a question addressed to the sound discretion of the trial court. K.S.A. 58-2412; K.S.A. 59-1711; *In re Estate of Osborn,* 179 Kan. 365, 295 P.2d 615 (1956); *Achenbach v. Baker,* 151 Kan. 827, 101 P.2d 937 (1940).

There is evidence to support a finding in this case that friction and controversy has existed and probably will continue to exist between Leola Berkley and the surviving beneficiary, James Brecklein. Such friction and hostility would make it extremely difficult to manage the trust, because Leola Berkley, as trustee, would be vested under the will with a wide discretion in distributing the funds to James Brecklein during the ten-year period. This would require the exercise of the trustee's discretion in a fair and sensitive manner which would be extremely difficult in an atmosphere of hostility between the trustee and the sole beneficiary.

In *Pedroja v. Pedroja,* 152 Kan. 82, 102 P.2d 1012 (1940), it was held that the district court did not err in its removal of the trustee of a testamentary trust and in the appointment of a new trustee where friction existed and probably would continue to exist between the trustee and the beneficiaries who were also the

trustee's sisters. We also have considered *In re Estate of Petty,* 227 Kan. 697, 608 P.2d 987 (1980), where it was held that, where a person designated to serve as executor of a will is in a position antagonistic toward the interests of the estate or heirs in a way indicating that his administration of the estate would probably result in prolonged and unnecessary difficulty or expense, then such a person should not be appointed as executor. On the basis of these cases and considering the factual circumstances as disclosed by the record, we hold that the district court did not abuse its discretion in finding that Leola Berkley was not a suitable person to be appointed as trustee of the testamentary trust and in refusing to appoint her as trustee.

The judgment of the district court is affirmed.