(884 P.2d 443)
No. 70,625

PATRICIA K. GRAGG, d/b/a KAY ENTERPRISES, INC., *Appellee*, v. JOSEPH A. RHONEY, f/d/b/a U.S. WEAPONS COLLECTORS, U.S. WEAPONS COLLECTORS, INC., and TOPEKA GUN AND KNIFE SHOW, INC., *Appellants.*

Opinion filed November 10, 1994.

*Alan P. Blinzler*, of Overland Park, for the appellants.

*Robert E. Duncan II*, of Topeka, for the appellee.

Before GREEN, P.J., GERNON and LEWIS, JJ.

LEWIS, J.: The parties to this action are long-time adversaries and competing entrepreneurs in the gun and knife show business. Patricia K. Gragg sued Joseph A. Rhoney, seeking a temporary restraining order and damages allegedly caused by Rhoney's infringement on Gragg's registered trade or service marks. She also alleged that Rhoney was guilty of the common-law tort of unfair competition by infringing on her mark as recognized under the common law. The trial court, at Gragg's request, issued a temporary restraining order restraining Rhoney from infringing on Gragg's marks. Rhoney responded by denying Gragg's allegations and took the offensive by asserting counterclaims against Gragg. Rhoney alleged that Gragg obtained registration of her marks in a fraudulent manner and damaged Rhoney by using the improperly issued marks to obtain a temporary restraining order. Rhoney also claims that Gragg did not bring this action in good faith and that her cause was frivolous. Rhoney sought to recover damages from Gragg caused by her fraudulent conduct, unfair competition, and the maintenance of a lawsuit in bad faith. Rhoney also sought to recover his costs and attorney fees under K.S.A. 60-2007.

In general, the trial court ruled in favor of Rhoney. It granted Rhoney's motion for summary judgment to the extent of holding that the service marks in question should not have been registered and canceled the registration of those marks. The court denied the balance of the relief sought on summary judgment and proceeded to trial on the remaining issues.

After trial, the court generally found against Gragg and granted her no relief. The trial court not only ordered the cancellation of the service marks in question, but concluded that these marks had not acquired a secondary meaning and that Gragg had no unfair competition action against Rhoney. The temporary restraining order issued earlier in the litigation was dissolved. Gragg does not appeal from adverse rulings by the trial court.

The trial court also held against Rhoney on his counterclaims and awarded no damages. The court concluded that Rhoney had

failed to satisfy his burden of proof in proving his counterclaims and damages.

Rhoney appeals from the adverse rulings of the trial court.

## FACTS

Both Gragg and Rhoney are promoters and organizers of gun and knife shows. Gragg has been in the business since the mid-1970's and puts on shows in Topeka under the name "Topeka Gun Show." Rhoney has put on gun shows in Topeka under the name "Topeka Gun & Knife Show." The parties have apparently been competitors at various locations throughout the state of Kansas and throughout the Midwest.

In late 1989, Gragg began to arrange for a show to be held in Hutchinson at the state fairgrounds. She proposed to advertise this show as the "Hutchinson Gun Show." Gragg signed a contract for such a show, and the show was scheduled for April 21-22, 1990.

Rhoney was also in the Hutchinson picture. He approached the authorities about putting on a show on the weekend of March 23-25, 1990. He was initially told that those dates were not available because they were within 30 days of Gragg's proposed show. Rhoney, not being one to take "no" for an answer, then contacted an attorney and, after some negotiations, the authorities booked his gun show for the state fairgrounds on the dates of March 23-25.

As might be expected, Gragg was not pleased when she discovered that Rhoney's show was going to be held a month in advance of her show. She first attempted to schedule a "military show" to be held on the same dates of Rhoney's show and also to be held on the state fairgrounds. That request was denied.

Gragg then resorted to the courts for satisfaction. She filed the instant action, seeking to enjoin Rhoney from using the name "Hutchinson Gun Show" or "Topeka Gun Show." She also sought to recover damages from Rhoney. After a trial, this matter was resolved as set forth earlier in this opinion, and Rhoney has appealed.

## THE MOTION FOR SUMMARY JUDGMENT

Rhoney filed a motion for summary judgment which was at

least partially granted by the trial court. Rhoney argues on appeal that the trial court erred in not granting his motion in its entirety.

"Summary judgment is proper where the only question or questions presented are questions of law." *Fletcher v. Nelson,* 253 Kan. 389, 391, 855 P.2d 940 (1993). It is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may be reasonably drawn from the evidence in favor of the non-movant. On appeal, this court applies the same rule, and where reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Kerns v. G.A.C., Inc.,* 255 Kan. 264, 268, 875 P.2d 949 (1994).

One of the issues on which Rhoney requested summary judgment was based on his allegations that the marks were not properly registered. The trial court relied on our opinion in *Harp v. Appliance Mart, Inc.,* 16 Kan. App. 2d 696, 827 P.2d 1209 (1992), in reaching its decision. It concluded that the marks "Hutchinson Gun Show" and "Topeka Gun Show" were merely geographically descriptive and were not entitled to protection under our opinion in *Harp.* It granted Rhoney's summary judgment motion in this regard and ordered the Secretary of State to cancel the registration of the marks in question. The trial court reserved for trial the issue of whether the marks had acquired a secondary meaning which would support a common-law action for unfair competition.

Despite this partial victory, Rhoney argues the trial court erred in not granting summary judgment on his counterclaim for fraud. We disagree.

It appears to us that the undisputed facts do not support a conclusion that Gragg fraudulently secured registration of her marks.

The existence of fraud is normally a question of fact and, thus, not appropriate for summary judgment. See generally *Waxse v. Reserve Life Ins. Co.,* 248 Kan. 582, Syl. ¶ 1, 809 P.2d 533 (1991). "Actionable fraud includes an untrue statement of fact, known to

be untrue by the party making it, made with the intent to deceive or recklessly made with disregard for the truth, where another party justifiably relies on the statement and acts to his injury and damage." *Nordstrom v. Miller*, 227 Kan. 59, 65, 605 P.2d 545 (1980). Fraud is never presumed and must be shown by a preponderance of evidence of a clear, convincing, and satisfactory nature. *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 226 Kan. 70, 78, 596 P.2d 816 (1979); *Fox v. Wilson*, 211 Kan. 563, Syl. ¶ 2, 507 P.2d 252 (1973).

The rule that the existence of fraud is generally not appropriate for summary judgment applies in the instant matter. We agree with the trial court that this issue was not ripe for summary judgment. Since the fraud issue was later tried to the court, any extended discussion of whether summary judgment was appropriate is not indicated. We have reviewed the record as it existed when the motion for summary judgment was cited, and we hold that the trial court did not err in denying summary judgment on this issue. We will later analyze the trial court's decision on the merits.

## REGISTRATION OF TRADEMARKS

At this stage, we do not consider this to be a "trademark" case in the sense of *Harp v. Appliance Mart, Inc.* It is basically an action which involves the question of whether fraud and/or bad faith was proven. However, given the framework in which the issues arise, we must examine the statutory enactments concerning the registration of trademarks in reaching our decision.

Rhoney alleges that Gragg was guilty of fraud in seeking and securing the registration of the marks "Topeka Gun Show" and "Hutchinson Gun Show." The allegations of fraud bring into play the provisions of two statutory enactments. K.S.A. 81-118(3)(d) provides in part that the Secretary of State shall cancel any mark which a court of competent jurisdiction has found was obtained by fraud. K.S.A. 81-120 reads as follows:

"Any person who shall . . . procure the filing or registration of any mark in the office of the secretary of state under the provisions hereof, by knowingly making any false or fraudulent representation or declaration, verbally or in writing, or by any other fraudulent means, *shall be liable to pay all damages sustained in consequence of such filing or registration, to be recovered by or on behalf of*

*the party injured thereby in any court of competent jurisdiction."* (Emphasis added.)

Although the trial court did order the marks canceled, its order was based on the fact that the marks were merely geographically descriptive in nature. This finding does not carry with it any statutory mandate for an award of damages. As a result, although the marks were canceled, Rhoney seeks a finding of fraudulent procurement of the registration in order to invoke the statutory sanctions of K.S.A. 81-120.

The claim of fraudulent procurement of registration is two-fold. First, Rhoney claims that Gragg fraudulently filed an application for registration which stated that the mark had been used in commerce when it had not. Second, he claims that Gragg falsely represented that the marks had been federally registered and copyrighted when they had not.

We deal here with an allegation of fraud. The burden of proof upon the party asserting the fraud is heavy. Fraud must be proven by a preponderance of evidence of a *clear and convincing* nature. The comments made earlier in this opinion with regard to the proof of fraud are equally applicable at this juncture and need not be repeated.

In view of this heavy burden of proof, the trial court, after hearing the evidence, made the following findings:

"6. The defendant failed to sustain the burden of proving that the plaintiff **knowingly** made a false or fraudulent representation or declaration in the course of procuring the registration of her service-marks, as provided by K.S.A. 81-120.

"7. The defendant has failed to sustain the burden of proving that he sustained damages **in consequence of** any false registration by plaintiff, as provided by K.S.A. 81-120."

These findings are essentially negative findings and increase the burden on appeal:

" 'The effect of a negative finding by a trial court is that the party upon whom the burden of proof is cast did not sustain the requisite burden. Absent arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion or prejudice the finding of the trial judge cannot be disturbed. An appellate court cannot nullify a trial judge's disbelief of evidence nor can it determine the persuasiveness of evidence which the trial judge may have believed.'

[Citation omitted.]" *Mohr v. State Bank of Stanley*, 244 Kan. 555, 567-68, 770 P.2d 466 (1989).

The registration of service marks in this state is provided for in chapter 81 of the Kansas Statutes Annotated.

K.S.A. 81-111(b) and (c) provide as follows:

"(b) The term 'service-mark' means anything in the sale or advertising of services to identify the services of one person and distinguish them from the services of others and includes without limitation the marks, names, symbols, titles, designations, slogans, character names, and distinctive features of radio or other advertising used in commerce.

"(c) The term 'mark' includes any trademark or service-mark, whether or not registered, filed or recorded under any law of this state, or of any other state, or of the United States of America."

K.S.A. 81-113(a) provides in relevant part: "Subject to the limitations set forth in this act, any person who adopts and uses a mark in this state may file in the office of the secretary of state, on a form to be furnished by the secretary of state, an application for registration of such mark."

K.S.A. 81-113(a)(3) goes on to provide that the application for registration must set out "the date when the mark was first used anywhere and the date when it was first used in this state by the applicant." K.S.A. 81-111(i) defines when a mark is "used" in the sale of services: "For the purposes of this act, a service-mark shall be deemed to be 'used' in this state when it is used or displayed in the sale or advertising of services *and* the services are rendered in this state." (Emphasis added.)

There are no Kansas decisions interpreting these statutes or construing when a mark may be deemed "used." The precise definition of the term has not been stated.

The question of when a mark is first "used" requires that we interpret the relevant statutes. This is a question of law, and our scope of review is unlimited. *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992); *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

" 'It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature

governs if that intent can be ascertained.' " *City of Wichita v. 200 South Broadway*, 253 Kan. 434, 436, 855 P.2d 956 (1993). "When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." *Martindale v. Tenny*, 250 Kan. 621, Syl. ¶ 2, 829 P.2d 561 (1992).

Under the statutory scheme, the act applies to the sale of "goods" or "services." K.S.A. 81-111(h) deals with when a mark is "used" in connection with the sale of "goods." K.S.A. 81-111(i) defines that term as applied to the sale of services. K.S.A. 81-119 classifies and defines "goods" and "services" as they are used in the act.

In this action, the service marks in question pertain to a gun show to be held in Hutchinson. These shows were packaged to various dealers and sellers as vehicles through which they could show and sell their goods. The role of Gragg was not to sell goods but to provide advertising, space, and the appropriate location for dealers and sellers. We conclude that Gragg was advertising and selling "services" through the use of the marks in question. The sale of "goods" was not the aim of Gragg; the sale of her promoted gun show and its resulting services to dealers and sellers was.

K.S.A. 81-111(i) is clear and unambiguous. The use of a mark in advertising alone is not a "use" of that mark within the meaning of the statute. In order to be "used" under our statutory scheme, the mark must be used or displayed in advertising of the services and also must be used in connection with the rendering of those services.

In this instance, Gragg's application for registration indicated the mark was first used prior to January 15, 1990. The record indicates that it was probably used in advertising prior to or on that date. However, Gragg's gun show was not held, nor were the services rendered in this state, until April 1990. Gragg's statement that the mark was "used" on January 15, 1990, was incorrect. We hasten to add that this does not necessarily mean that the statement was fraudulent.

Gragg argues that the mark was "used" when first published for advertising. This argument would render meaningless the stat-

utory requirement that services must not only be advertised but must be rendered in this state before a service mark has been "used" under the statute. There is a presumption that the legislature understands the meaning of the words it uses and that it does not intend to enact meaningless legislation. *Bank of Kansas v. Davison*, 253 Kan. 780, 788, 861 P.2d 806 (1993); *Todd v. Kelly*, 251 Kan. at 515. We hold that Gragg's service marks had not been "used" within the meaning of the statute at the time the application for registration was filed.

The second claim of fraud by Rhoney deals with certain marks used on the application. Copies of several advertisements were attached to Gragg's application for registration. The flyer on the Hutchinson Gun Show advertises the mark and contains the symbol © immediately under the word "Hutchinson." This would indicate to an observer of the advertisement that the mark had been copyrighted. The flyer announcing the Topeka Gun Show contains the symbol ®. This would indicate that the mark had been federally registered. The record does indicate that Gragg submitted copies of flyers which indicated she had obtained a federal copyright and a federal trademark. The fact is, the marks had neither been copyrighted nor federally registered.

Gragg does not deny that the flyers attached to the application contained the insignias. However, Gragg testified that she did not purposely put the marks on the flyers with the intent to deceive or mislead the Secretary of State. Gragg testified at trial that she did not put the symbols © and ® on the flyers and it was her belief that the advertising agency that prepared the flyers inserted them on the advertisements. Rhoney did not present evidence to contradict this testimony of Gragg.

Rhoney cites various pages of Gragg's deposition to support his motion for summary judgment, but those depositions are not part of the record on appeal. It is Rhoney's burden to designate a record sufficient to support his claims on appeal. See *Eisenhut v. Steadman*, 13 Kan. App. 2d 220, 223, 767 P.2d 293 (1989). There is no evidence in this record to support Rhoney's allegation that Gragg knew the symbols were on the flyer or that she intended to defraud or mislead the Secretary of State's office by the use of the symbols in question.

When the dust settles, we have a situation in which an application for registration was filed which contains an incorrect statement on the date the service mark was first "used" and apparently implies that the marks were federally registered and copyrighted. These statements were not accurate and may have misled the office of the Secretary of State.

The question we must resolve is whether the trial court erred in concluding that despite these incorrect statements in the application, Rhoney did not prove that Gragg was guilty of fraud or that he was damaged by her fraud. These findings were negative findings, and we have earlier outlined our scope of review of such findings. In view of our limited scope of review on these findings, we must affirm the decision of the trial court.

We have defined, in this opinion, when a mark is first "used" in this state. Gragg stated in her application that her marks had first been used prior to January 15, 1990. This statement was an incorrect interpretation of the Kansas statutory definition. However, there is a vast difference between an incorrect interpretation of the law and a knowingly false and fraudulent statement of fact. As we indicated earlier, in order to be fraudulent, an untrue statement of fact must be known to have been untrue by the party making it and must have been made with the intent to deceive or recklessly made with disregard for the truth. The state of this record does not mandate a finding that Gragg was guilty of fraudulent conduct. The trial court apparently concluded that Gragg's statements of fact regarding "use" in the application were based on a good faith but incorrect interpretation of the law. Our interpretation of the statute is a matter of first impression in this state. Under the circumstances, the statements by Gragg in her application are difficult to brand as fraudulent. The issue of whether these statements were fraudulent or merely incorrect was a purely subjective question concerning Gragg's state of mind and intent. Those were questions for the trial court to determine. The trial court had an opportunity to observe the demeanor of the witnesses and is in a much better position to determine a subjective issue of this nature than is this court on appeal. The trial court was not convinced by Rhoney's evidence that Gragg was

guilty of fraudulent conduct. We are not in a position to substitute our judgment for that of the trial court.

As to the apparent representation that the marks were federally registered and copyrighted, we make much the same conclusion. There is no question but that the application did contain an indication that the marks had been federally registered and copyrighted. However, there is no evidence that these symbols were used with an intent to deceive. Gragg testified that she did not put these symbols on the flyers and that she was not attempting to deceive the Secretary of State. This evidence is not seriously contradicted and, if believed by the trial court, fully supports its finding that there was no fraudulent conduct.

Rhoney cites testimony from the Deputy Secretary of State to support his argument that the registration of the marks would not have been granted *but for* Gragg's fraud. We do not read the testimony of Sherman Parks, Jr., in the same light as does Rhoney. There is nothing in his testimony to indicate that the Secretary of State's office relied on the existence of a federal copyright or a federal registration. As we have pointed out earlier, a justifiable reliance on a fraudulent statement is necessary to sustain the burden of proof of fraud.

Rhoney argues that the trial court erred by not finding that he was damaged by Gragg's fraud. This argument is dependent upon a finding that Gragg committed fraud. Since we have concluded that the trial court did not err in concluding that Rhoney did not sustain his burden of proof on the issue of fraud, the question of damages is largely irrelevant.

In the final analysis, the trial court concluded that Rhoney had not sustained his burden of proof on either the issue of fraud or the issue of damages. Rhoney does not claim that the trial court's decision is the result of bias, passion, or prejudice or that the trial court arbitrarily ignored undisputed evidence. Rhoney merely argues that the trial court was incorrect. As we have pointed out earlier, our standard of review of the court's negative finding is such that it requires us to affirm the trial court.

## FRIVOLOUS ACTION

Rhoney argues that Gragg maintained this action in bad faith

and that it was frivolous. As a result, he asked the trial court to award him costs and attorney fees pursuant to K.S.A. 60-2007(b). Rhoney argues that the trial court's failure to do so is reversible error.

Our Supreme Court in the recent decision of *Giblin v. Giblin*, 253 Kan. 240, Syl. ¶¶ 1, 6, 854 P.2d 816 (1993), determined the law applicable to this issue:

"Two separate requirements must be met before attorneys fees and expenses can be assessed pursuant to K.S.A. 60-2007(b): (1) The claim asserted was without reasonable basis in fact; and (2) the claim was not asserted in good faith."

"The party who asserts a pleading has no basis in fact and is not asserted in good faith has the burden of proving that assertion."

In this action, the trial court made the following finding: "5. The Court is not persuaded that the plaintiff **lacked good faith** in filing and maintaining the instant action, as provided by K.S.A. 60-2007."

This is a negative finding, and as we have previously stated, we will not overturn such a finding absent a showing of arbitrary disregard of undisputed evidence or proof of bias, passion, or prejudice. In addition, the ultimate decision on whether to award costs and attorney fees pursuant to K.S.A. 60-2007 is left to the sound discretion of the trial court. *Jarvis v. Drake*, 250 Kan. 645, 653, 830 P.2d 23 (1992).

We find nothing in the record which indicates that the action was not filed and maintained in good faith. We note first of all that one of the causes of action asserted by the plaintiff was a common-law cause of action for unfair competition. Our examination of the record indicates Gragg presented testimony supportive of this claim. The mere fact that the trial court concluded Gragg's marks had not acquired a secondary meaning does not mean that the action was maintained in bad faith.

We have earlier pointed out that this decision is a decision of first impression insofar as use of a service mark is concerned. We are not prepared to hold an action based upon one possible interpretation of the statute is frivolous when that interpretation remains an open question.

Rhoney had the burden of proof on this claim, and the trial court concluded that he did not sustain that burden of proof. We

find nothing in the record which compels us to reverse that negative finding.

Even if we were to conclude that the trial court erred in failing to find the action was frivolous or maintained in bad faith, it would not end the matter. As we pointed out earlier, the decision of whether to assess costs and attorney fees is vested in the sound discretion of the trial court. "The test on appellate review of whether the trial court abused its discretion is whether no reasonable person would agree with the trial court. If any reasonable person would agree, appellate courts will not disturb the trial court's decision." *Hoffman v. Haug,* 242 Kan. 867, 873, 752 P.2d 124 (1988). We are unable to conclude on this record that no reasonable person would find that Gragg did not have a good faith belief that her mark was legally registered. We find no abuse of discretion by the trial court in denying costs and attorney fees under 60-2007.

Affirmed.