(934 P.2d 1001)
No. 74,663

In the Matter of the Estate of MARY ISABEL WINSLOW, Deceased.

Opinion filed March 21, 1997.

*George Voss*, of Dodge City, for appellant/cross-appellee, Richard W. O'Neill II.

*Glenn I. Kerbs* and *Lynn M. Retz*, of Patton, Kerbs & Hess, of Dodge City, for appellee/cross-appellant, executor of the estate.

*Philip Ridenour*, of Ridenour and Ridenour, of Cimarron, for appellees/cross-appellants Margaret O'Neill Romagnoli and Jacqueline W. Verity.

Before RULON, P.J., LEWIS, J., and PHILIP L. SIEVE, District Judge, assigned.

RULON, J.: This is a will contest case. Claimant Richard O'Neill II appeals the district court's interpretation of a residuary clause. The executor of the estate and the remaining residuary legatees, respondents, cross-appeal the court's denial of attorney fees under K.S.A. 60-211 and K.S.A. 60-2007. We affirm.

The material facts of this case are essentially undisputed and are as follows:

Mary Isabel Winslow (decedent) executed a will in November 1992. The clause at issue, the residuary clause, reads:

"All the rest and residue of my estate I will, devise and bequeath, share and share alike, per stirpes and not per capita, unto the following:

"Margaret O'Neill Romagnoli;

"Hugh B. O'Neill;

"Jacqueline W. Verity."

Mary died on November 29, 1993. Margaret Romagnoli and Jacqueline Verity survived her, but Hugh B. O'Neill did not. Hugh B. O'Neill left no spouse or children.

In the petition for final settlement of Mary's estate, the executor claimed that because Hugh had predeceased Mary, and because Hugh had no issue surviving, his interest had lapsed. Claimant, Hugh's nephew, challenged the final settlement, arguing that as the sole testamentary beneficiary of Hugh's estate, he was entitled to Hugh's share of Mary's estate.

The district court ultimately found the will was unambiguous and the anti-lapse statute, K.S.A. 59-615, was inapplicable, and concluded Hugh's interest in Mary's estate had lapsed. The court further denied respondents' motion for attorney fees.

## STANDARD OF REVIEW

Our standard of review is well settled:

"The construction of a written instrument is a question of law, and the instrument may be construed and its legal effect determined by an appellate court."

"Where a court, either trial or appellate, is called upon to determine the force and effect to be given terms of a will, the court's first duty is to survey the instrument in its entirety and ascertain whether its language is so indefinite and uncertain as to require employment of rules of judicial construction to determine its force and effect."

"When interpreting a will, the primary function of the court is to ascertain the testator's intent from the four corners of the will and to carry out that intent if possible and not contrary to law or public policy."

"Where the language of a will is clear, definite, and unambiguous, the court should not consider rules of judicial construction to determine the intent of the testator." *In re Estate of Cline*, 258 Kan. 196, Syl. ¶¶ 1-4, 898 P.2d 643 (1995).

## THE RESIDUARY CLAUSE

The principal issue before us is whether the district court erred in finding that Hugh's interest in Mary's estate had lapsed and, therefore, the property described in Mary's residuary clause passed to the two named residuary legatees.

As we understand, claimant's sole argument is that by using the term "per stirpes," Mary communicated her intent that a bequest not lapse if a residuary beneficiary predeceased her, but should

pass to the beneficiary's heirs whether they be issue or beneficiaries under Hugh's will.

"At common law a gift to legatee or devisee who died before the testator lapsed. This rule was based on necessity and the ambulatory character of a will. Anti-lapse statutes soon evolved to temper application of the common-law rule. However, in the absence of a statute, or other provisions in a will which showed the testator intended the gift to go to some other designated person when the beneficiary predeceased the testator, the gift lapsed. [Citation omitted.]" *In re Estate of Thompson*, 213 Kan. 704, 705-06, 518 P.2d 393 (1974).

K.S.A. 59-615 provides as follows:

"(a) If a devise or bequest is made to a spouse or to any relative by lineal descent or within the sixth degree, whether by blood or adoption, and such spouse or relative dies before the testator, leaving issue who survive the testator, such issue shall take the same estate which said devisee or legatee would have taken if he or she had survived, unless a different disposition is made or required by the will.

"(b) As used in this section or as used in any will executed on or after July 1, 1973, unless the provisions of such will specifically provide to the contrary, the term 'issue' means offspring, progeny or lineal descendants, by blood or adoption, in whatever degree."

K.S.A. 59-615, the Kansas anti-lapse statute, becomes operative only when (1) the testator bequeaths or devises property to a beneficiary who is a member of the class designated by the statute; (2) the specified beneficiary predeceases the testator *and leaves issue who survive the testator*; and (3) the testator does not revoke or change his or her will as to the predeceased beneficiary. 213 Kan. at 709. Here, both parties concede the anti-lapse statute is not applicable because, while Hugh predeceased Mary and was related to Mary within the sixth degree, he had no issue.

The long-settled rule in Kansas is that

"the share of a residuary legatee who dies without issue before the death of the testator goes to the surviving residuaries, in the absence of some special provision of the will showing a different purpose. The rule that such share shall be disposed of as in the case of intestacy is rejected as being in conflict with the established policy of the court to ascertain and give effect to the actual intention of the maker of the will." *In re Estate of Sowder*, 185 Kan. 74, 80, 340 P.2d 907 (1959).

The primary authority relied on by claimant is *Richland Trust Co. v. Becvar*, 44 Ohio St. 2d 219, 339 N.E.2d 830 (1975), where the testatrix's will made a number of specific gifts to specific per-

sons and in almost every instance designated whether or not the gift would lapse if the individual predeceased her. The residuary clause divided the residue of the estate among seven individuals. Interestingly, the language of the residuary clause provided that if *certain* of these named individuals did not survive the testatrix, then there would be a gift over to specified beneficiaries. However, the gift over language was not uniformly provided in all the residuary bequests. The bequest in question reads; "One-seventh (⅐) to Louise Hummel, per stirpes." The *Becvar* court concluded that where the testatrix wanted the gift to lapse, she said so with provisions for a gift over. Where the testatrix intended the secondary gifts to go to the issue of the primary takers, she so designated. The *Becvar* court further concluded the testatrix's intent was that if the primary taker predeceased her, and she did not designate a gift over to the primary taker's issue or someone else, she meant for the gift to go to the heirs at law of the primary taker as determined by the statutes of descent and distribution.

Unquestionably, the *Becvar* decision is a variation on the general rule that our Supreme Court has adopted:

"The law regarding the devolution of a lapsed portion of a residuary estate is not uniform in this country. For an exhaustive survey of the authorities see 28 A.L.R. 1237; 139 A.L.R. 868; and 36 A.L.R. 2d 1117. The English common law rule, followed by a majority of the courts in this country in the absence of statute, is that the lapsed portion of a residuary devise or legacy does not inure to the benefit of the other residuary devisees or legatees under a residuary devise or bequest to several named persons as tenants in common, who do not take jointly or as members of a class, unless the intention of the testator to that effect clearly appears, but such lapsed portion of the residuary estate is removed from the operation of the residuary clause and becomes intestate property, passing to the heirs of the testator, or his distributees. *Sowder*, 185 Kan. at 77.

In Kansas, the general common-law rule was expressly rejected in favor of the rule first espoused in *Corbett v. Scaggs*, 111 Kan. 380, 207 Pac. 819 (1922), and later reaffirmed in *Sowder*, 185 Kan. at 80. Consequently, the *Becvar* decision has little persuasive effect here.

The phrase "per stirpes" has been defined as:

"By roots or stocks; by representation. This term, derived from the civil law, is much used in the law of descents and distribution, and *denotes that method* of

dividing an intestate estate 'where a class or group of distributees take the share which their deceased would have been entitled to, had he or she lived, taking thus by their right of representing such ancestor, and not as so many individuals. It is the antithesis of *per capita (q.v.). Buxton v. Nobel*, 146 Kan. 671, 73 P.2d 43, 47." (Emphasis added.) Black's Law Dictionary 1144 (6th ed. 1990).

The legal phrase "per stirpes" does not designate *who* will share in the estate, but rather, how the estate will be divided among those who do take. *Varns v. Varns*, 81 Ohio App. 3d 26, 29, 610 N.E.2d 440 (1991). The term refers to the manner of distribution and denotes that method of dividing an intestate estate where a class or group of distributees takes the share to which their deceased would have been entitled, thus taking by their right of representing such ancestor. *Wright v. Brandon*, 863 S.W.2d 400, 403 (Tenn. 1993).

Here, the inclusion of the phrase "per stirpes" does not designate who should take under decedent's residuary clause. Had Hugh left issue or lineal descendants, the anti-lapse statute would have protected such interest and distribution would be per stirpes. Had decedent named or described where Hugh's share would go if Hugh predeceased her, then the gift would not have lapsed and distribution would be per stirpes to those individuals or their issue. However, merely including the phrase "per stirpes" does not by itself indicate that Hugh's share should go to the person or persons named in his will. We are convinced the district court was correct in distributing the residuary of Mary's estate to the two remaining legatees.

## EXTRINSIC EVIDENCE

Claimant next argues the district court erred in finding decedent's will was unambiguous and excluding extrinsic evidence of her intent. Claimant argues the differing language used in decedent's will, as well as decedent's failure to name a substitute legatee should one or more of the residuary legatees predecease her, make the will ambiguous. Claimant further argues that Mary knew Hugh had no issue and was unlikely to have any and thus meant for his share to pass to his heirs, either by his will or the laws of intestacy.

Thus, he claims the court should have considered the testimony of the scrivener of the will. We disagree with claimant's argument.

"When the language used in a will is challenged, the first duty of a trial or appellate court is to determine whether the will is ambiguous. *In re Estate of Brecklein*, 6 Kan. App. 2d 1001, 1007, 637 P.2d 444 (1981). Where a will is not ambiguous, extrinsic evidence of intent is inadmissible. *In re Estate of Brecklein*, 6 Kan. App. 2d at 1007. The basic principles of will construction are summarized in *Russell v. Estate of Russell*, 216 Kan. 730, 534 P.2d 261 (1975):

" 'In construing a will courts must (a) arrive at the intention of the testator from an examination of the whole instrument, if consistent with rules of law, giving . . . every single provision thereof a practicable operative effect, (b) uphold it if possible, (c) avoid any interpretation resulting in intestacy when possible, (d) give supreme importance to the intention of the testator, and (e) when the language found in such instrument is clearly and unequivocally expressed determine the intent and purpose of the testator without resort to rules of judicial construction applicable to the interpretation of an instrument which is uncertain, indefinite and ambiguous in its terms.' " Syl. ¶ 1.

"When the testator's intent is clearly and unequivocally expressed, the will must be enforced in accordance with its provisions. *In re Estate of Wernet*, 226 Kan. 97, Syl. ¶ 1, 596 P.2d 137 (1979). The court should not consider the rules of judicial construction to determine the testator's intent if the language of the will is clear, definite, and unambiguous. 226 Kan. 97, Syl. ¶ 2. Further, although a will speaks at the date of death, the language of a will must be construed as of the date of its execution and in light of the then surrounding circumstances. 226 Kan. at 106." *In re Estate of Pickrell*, 14 Kan. App. 2d 375, 378-79, 791 P.2d 41 (1990), *aff'd* 248 Kan. 247, 806 P.2d 1007 (1991).

Here, the language found in Mary's will is relatively simple and straightforward. Paragraph V provides that decedent bequeathed to each of seven individuals various amounts of money ranging from $2,000 to $7,000. The paragraph specifically limits the gifts to those persons living at the time of decedent's death.

The residuary clause provides:

"All the rest and residue of my estate I will, devise and bequeath, share and share alike, per stirpes and not per capita, unto the following:

"Margaret O'Neill Romagnoli;
"Hugh B. O'Neill;
"Jacqueline W. Verity."

The intention of each clause is clear. Mary wanted the specific cash gifts to go to those named in paragraph V only in the event those persons survived her. However, the residuary beneficiaries

would take, either in their own right or their issue would take per stirpes, whether any one of those named beneficiaries survived decedent. Thus, the district court was correct in excluding any extrinsic evidence as to Mary's intent.

We do note that the court did hear the testimony of the scrivener before making a ruling on its admissibility. The scrivener specifically said he did not know at the time the will was executed whether or not Hugh had children. Thus, the scrivener could not testify if Mary intended Hugh's share to go to whomever Hugh named in his will or to whomever was due to take by intestacy.

## ATTORNEY FEES

On cross-appeal, respondents argue claimant's arguments were frivolous and violated K.S.A. 60-211 and K.S.A. 60-2007, and respondents are entitled to be reimbursed for attorney fees for defending this action. The district court denied respondents' claim for attorney fees.

"If the controlling facts are based upon written or documentary evidence by way of pleadings, admissions, depositions, and stipulations, the trial court has no peculiar opportunity to evaluate the credibility of witnesses. In such situation, this court on appellate review has as good an opportunity to examine and consider the evidence as did the court below and to determine de novo what the facts establish." *Giblin v. Giblin*, 253 Kan. 240, Syl. ¶ 4, 854 P.2d 816 (1993).

Under the facts of this case, the only issue was the construction of Mary's will and interpretation of certain case law. While there was testimony taken, the district court ultimately decided the will was unambiguous and did not consider the testimony. As such, this issue is a question of law subject to de novo review.

The respondents' primary argument is that while there may be a public policy argument for allowing a person named in Hugh's will to take as a substitute legatee, claimant did not make that argument. According to respondents, claimant's sole claim was that current case law allows him to take Hugh's share as a substitute legatee; they argue no case or statute supports this argument. According to respondents, claimant's theory of the case is not warranted by existing law, and he makes no argument that there should

be a modification, reversal, or extension of existing law and therefore is in violation of K.S.A. 60-211.

A review of the case law cited by claimant shows that it is not entirely unreasonable to extend such legal reasoning to reach the result advocated by claimant. However, respondents are correct in that no case specifically supports claimant's theory of the case.

A similar argument for K.S.A. 60-211 sanctions was made in *In re Hesston Corp.*, 254 Kan. 941, 870 P.2d 17 (1994), where the Hesston Corporation sought sanctions because certain preferred shareholders challenged the corporation over the price of their shares in a cash-out merger. According to Hesston, the dissenting shareholders should have dismissed their counterclaim against the corporation which alleged breach of contract and breach of fiduciary duty because they should have discovered there was no factual or legal support for their claim. Central to Hesston's argument that sanctions should have been imposed was its claim that the shareholder claims were not warranted by existing law or a good faith argument for extension, modification, or reversal of existing law. The corporation argued the shareholders' claims were contrary to all existing corporate law and the shareholders failed to present legal authority to support their position. In response, our Supreme Court said:

"This, of course, cannot be the test for a violation of 60-211. Issues of first impression will arise in Kansas which have not been litigated elsewhere or which have not been litigated widely. Litigants and creative advocates must not be prevented from developing new theories or presenting new causes of action in the courts of this state merely because they are untested or have not been received favorably in some other jurisdiction. Where the weight of authority is overwhelmingly unfavorable to a litigant's position or there is controlling authority against it, there may be a question whether the claim is warranted by a good faith argument for extension, modification or reversal. Neither of those circumstances is presented here." 254 Kan. at 990.

Under the facts here, claimant advances a theory that, as far as our research and the cases in the brief show, has not been directly addressed by any jurisdiction. Thus, the great weight of authority is not contrary to claimant's position, it simply does not address it. As in *Hesston*, while claimant's argument is without support in case

law, it is not so far outside the realm of debate as to warrant sanctions under K.S.A. 60-211.

Respondents additionally contend they should have been awarded fees under K.S.A. 60-2007.

"Before attorney fees and expenses can be assessed pursuant to K.S.A. 60-2007(b), it must be shown that the claim was asserted without a reasonable basis in fact and not in good faith. The party who asserts that a pleading has no basis in fact and is not asserted in good faith has the burden of proving that assertion." *Gragg v. Rhoney*, 20 Kan. App. 2d 123, Syl. ¶ 6, 884 P.2d 443 (1994), *rev. denied* 256 Kan. 994 (1995).

The facts in this case are not in dispute, so the first prong of the test does not apply. The respondents argue that because there is no legal authority for claimant's position, then this action was not brought in good faith and therefore sanctions are required.

Under K.S.A. 60-2007, the decision whether to award attorney fees lies in the sound discretion of the trial court. See 20 Kan. App. 2d at 134. The district court, without elaboration, found that claimant's claims were not so frivolous as to justify attorney fees.

Respondents present no case law specifically rejecting claimant's theory of the case. Indeed, respondents' only argument is that because no case has ever expressly upheld such a claim, the claim must be frivolous. From a review of the case law on this subject, we conclude the denial of attorney fees was not an abuse of discretion.

Affirmed.