(129 P.3d 586)
No. 92,912

LILIA RODRIGUEZ-TOCKER, M.D., *Appellee*, v. THE ESTATE OF ALFRED M. TOCKER, M.D., THE ALFRED M. TOCKER, M.D., LIVING TRUST, AND DARRYL S. TOCKER, SUCCESSOR TRUSTEE OF THE ALFRED M. TOCKER, M.D., LIVING TRUST AND EXECUTOR OF THE ESTATE OF ALFRED M. TOCKER, M.D., *Appellants*.

IN THE MATTER OF THE ESTATE OF ALFRED M. TOCKER, M.D.

Opinion filed February 10, 2006.

*Warren R. Southard,* of Madden & Orsi, of Wichita, and *Robert Martin* and *Ross W. Townsend,* of Martin, Pringle, Oliver, Wallace and Bauer, L.L.P., of Wichita, for appellants.

*Vern Miller,* of Law Offices of Vern Miller, of Wichita, *Robert M. Hughes,* of Bever Dye, L.C., of Wichita, and *Coy M. Martin* and *John Terry Moore,* of Moore Martin, L.C., of Wichita, for appellee.

Before PIERRON, P.J., CAPLINGER, J., and BUKATY, S.J.

CAPLINGER, J.: Defendants appeal the district court's order granting partial summary judgment to plaintiff, Lilia Rodriguez-Tocker, M.D., arguing the court erroneously interpreted the antenuptial and postnuptial agreements executed by Lilia and Alfred M. Tocker, M.D., now deceased. Defendants also appeal the court's orders enjoining defendants from depleting the assets of the trust or estate and directing the removal of the trustee and executor.

We dismiss defendants' challenge to the district court's order granting partial summary judgment based upon our finding that this court lacks jurisdiction over that nonfinal decision. However, we affirm the decisions of the district court which are before us on direct appeal. Specifically, we conclude the district court did not abuse its discretion in issuing an injunction prohibiting defendants from distributing or transferring any assets of the trust or estate pending final adjudication of Lilia's claims. And we further find the district court did not abuse its discretion in disqualifying Darryl Tocker to serve as trustee and executor and peremptorily disqualifying Robert Tocker to serve as successor trustee and executor, pending resolution of this litigation.

*Background*

Lilia and Alfred married on December 11, 1961. Prior to their marriage, the parties executed an antenuptial agreement, which provided, in pertinent part:

"WHEREAS, the said Lilia M. Rodriguez, Party of the First Part, is the owner of certain stock, savings, checking accounts and other personal property, and

"WHEREAS, the said Alfred M. Tocker, Party of the Second Part, is the owner of certain notes, debentures, stock, securities, savings, checking accounts and other personal property, and

"WHEREAS, each of the parties hereto is familiar with the nature, extent and amount of property owned by the other, and it is mutually desired and agreed between the said parties that the property and estate of each of the said parties as now composed and constituted shall remain separate and be subject to the sole control and use of its owner as well after the solemnization of said marriage as previous thereto, except as hereinafter stated; and

. . . .

"IT IS AGREED BY AND BETWEEN THE PARTIES TO THIS AGREE-MENT . . . as follows:

"1. That the estate of the Party of the First Part shall remain her separate property, subject entirely to her individual control and use, the same as if she were unmarried; and the Party of the Second Part shall not acquire by reason of said contemplated marriage, for himself, his heirs, assigns or creditors, any interest in said property or estate or right to the control thereof or any interest in the gross income, increase, rents, profits or dividends arising therefrom, excepting as here-inafter provided; and IT IS FURTHER AGREED BY THE PARTY OF THE FIRST PART that any property the Party of the Second Part may hereafter ac-quire by will or descent shall be owned and held by him as though he had acquired it before the solemnization of said marriage; and the Party of the Second Part agrees in consideration of said contemplated marriage and the conveyance of the Party of the First Part herein set forth that he will and does waive, release and relinquish unto the Party of the First Part all right to the use and control of her separate property and the estate and the gross income therefrom and further agrees that the Party of the First Part shall have the right at any time to dispose of any part or all of her separate property or estate by deed, will, or otherwise, upon her sole signature, hereby ratifying and consenting on his part to any and all such disposition of her said property or estate, or in case any purchaser desires that he join in the execution of any instrument conveying any part of her said separate estate, he will jointly execute the same with her.

"2. That the estate of the Party of the Second Part shall remain his separate property, subject entirely to his individual control and use, the same as if he were unmarried; and the Party of the First Part shall not acquire by reason of said contemplated marriage, for herself, her heirs, assigns or creditors, any interest in said property or estate or right to the control thereof or any interest in the gross income, increase, rents, profits or dividends arising therefrom, excepting as here-inafter provided; and IT IS FURTHER AGREED BY THE PARTY OF THE SECOND PART that any property of the Party of the First Part may hereafter acquire by will or descent shall be owned and held by her as though she had acquired it before the solemnization of said marriage; and the Party of the First Part agrees in consideration of said contemplated marriage and the conveyance of the Party of the Second Part herein set forth that she will and does waive, release and relinquish unto the Party of the Second Part all right to the use and control of his separate property and the estate and the gross income therefrom and further agrees that the Party of the Second Part shall have the right at any time to dispose of any part or all of his separate property or estate by deed, will, or otherwise, upon his sole signature, hereby ratifying and consenting on her part to any and all such disposition of his said property or estate, or in case any pur-chaser desires that she join in the execution of any instrument conveying any part of his said separate estate, she will jointly execute the same with him.

"3. Both parties to this agreement are licensed practitioners of medicine, and as to the income or personal earnings of either or both or the acquiring of real

estate, notes, stocks, securities and other personal properties after the contemplated marriage and subsequent to the solemnization of said marriage, the same shall be considered as joint earnings and shall become their property as joint tenants with right of survivorship, and the survivor shall become the sole owner thereof in the case of the death of either, and any other real, personal or mixed property acquired by either or both out of the income of either or both during said marriage relationship shall become likewise joint property with the right of survivorship. PROVIDED, HOWEVER, that any increment to the separate estate of either by operation of law shall not be considered as income or joint earnings; and PROVIDED, FURTHER that nothing in this agreement shall relieve said Party of the Second Part from his obligation as a husband to the Party of the First Part as his wife, as provided by the laws of the State of Kansas.

"4. The provisions of this agreement shall extend to any and all properties of the said parties now owned by said parties as separate estate or joint earnings during such marriage relationship under the laws of any state or country."

Subsequently, in 1977, the parties executed a postnuptial agreement, which amended paragraph 3 but ratified the remainder of the antenuptial agreement. The paragraph, as amended, provided:

" '3. Both parties to this agreement are licensed practitioners of medicine, and as to the income and personal earnings of either or both and the acquiring of real estate, notes, stocks, securities and other property of any nature whatsoever during their marriage, the same shall be considered as joint monies and shall become their joint property as tenants in common, not as joint tenants and without right of survivorship. Each shall own said property in equal shares and each shall have the right to dispose of his or her share, as the case may be, during lifetime, and by testamentary disposition without regard to the rights or wishes of the other. Any increment or appreciation to the separate estate of either party by operation of law or otherwise shall not be considered as income or joint earnings or joint property. Nothing in this agreement shall relieve AL from his obligation as a husband to LILIA as his wife as provided by the laws of the State of Kansas.' "

In 2000, apparently unbeknown to Lilia, Alfred (Al) created the Alfred M. Tocker, M.D., Living Trust ("the trust"). The trust identified Al's nephew, Darryl Tocker, as successor trustee and Al's brother, Robert Tocker, as successor trustee in the event Darryl was unavailable. Further, the trust directed the successor trustee to distribute the trust assets upon Al's death to Al's nephews and nieces; Lilia was not named as a beneficiary.

The parties remained husband and wife until Al's death on October 23, 2001. No children were born of the marriage. At the time of Al's death, the trust, comprised of various bank accounts, stocks,

bonds, mutual funds, and the like, was valued at approximately $8 million.

In November 2001, Darryl Tocker filed a petition for probate of Al's will and issuance of letters testamentary in Sedgwick County District Court. The court admitted the will to probate and appointed Darryl as executor in conformance with the wishes set forth in Al's will. Darryl identified the value of the probate assets as $277,410.

Lilia filed written defenses in the probate case as well as a petition exercising her right to receive her spousal elective share of Al's augmented estate. Additionally, Lilia filed a petition in Sedgwick County District Court, case No. 02 C 0446, against the following parties: The Estate of Alfred M. Tocker, M.D., The Alfred M. Tocker, M.D., Living Trust, and Darryl S. Tocker, Successor Trustee of the Alfred M. Tocker, M.D., Living Trust and Executor of the Estate of Alfred M. Tocker, M.D. (defendants). Lilia initially also included as a party Robert L. Tocker in his capacity as successor trustee of the trust and alternate executor of Al's estate. The district court dismissed Robert as a party, however, and he is not a party to this appeal.

Lilia's petition asserted alternative claims for: (1) breach of the antenuptial and postnuptial agreements; (2) a determination that the agreements were void; and (3) a declaration of Lilia's spousal election rights. Additionally, the petition asserted claims for breach of fiduciary duty and conflict of interest against Darryl and alleged wrongful conversion. Finally, the petition requested appointment of a receiver and an accounting. Essentially, through the civil case, Lilia sought to bring the assets of the trust into the probate estate for distribution in accordance with her spousal elective share. The district court later dismissed Lilia's claims for breach of fiduciary duty, conflict of interest, and conversion.

*District court's decision on motion for partial summary judgment*

Lilia filed a motion for partial summary judgment in the civil action requesting that the district court construe the antenuptial and postnuptial agreements and determine the legal effect of such

upon Lilia's share of and interest in the income, property, and assets earned or acquired by Al during their marriage. Lilia argued growth from Al's separate property during the marriage, whether in the form of income, profits, or other increases, constituted joint property and she did not clearly and unmistakably waive her right of election as to that property.

In an order dated December 1, 2003, the district court determined no genuine issues of material fact remained as to the construction of the antenuptial and postnuptial agreements and, accordingly, deemed the matter ripe for partial summary judgment. The court found the parties agreed both that the antenuptial and the postnuptial agreements were not ambiguous and that it would be improper to allow extrinsic evidence to establish the intent of the parties. The court noted the agreements identified as separate property all property acquired by the parties prior to the marriage and/or inherited by the parties during the marriage by will or descent. Further, the court acknowledged the agreements limited the parties' rights regarding each other's separate property. The court concluded, however, that "[t]he income from, or growth of, separate property during the marriage is joint property," which, pursuant to the postnuptial agreement, the parties owned as tenants in common. The court also determined the agreements did not contain language clearly and unmistakably waiving Lilia's right of election.

Defendants filed two motions for reconsideration of the court's order granting partial summary judgment, disputing the court's findings that defendants agreed the agreements were unambiguous and that extrinsic evidence should not be considered and challenging the court's interpretation of the antenuptial and postnuptial agreements.

The district court adhered to its prior ruling and denied defendants' motions for reconsideration. However, in an order dated August 3, 2004, the court granted defendants' request to allow an interlocutory appeal of the court's order granting partial summary judgment, finding the proper construction of the antenuptial and postnuptial agreements was a controlling issue in the case, substantial grounds existed for difference of opinion regarding the

proper construction of the agreements, and an interlocutory appeal would ultimately advance the conclusion of the litigation.

On August 16, 2004, defendants filed an application with this court for permission to take an interlocutory appeal of the district court's partial summary judgment decision. Importantly, that application was denied by the motions panel of this court in an order dated August 25, 2004.

*District court's decision on motions for injunction and for removal of trustee*

In March 2004, in response to a motion by defendants for authority to distribute trust income, Lilia moved to enjoin "defendants from further depleting trust assets by any means, pending final adjudication and/or the posting of a good and sufficient trustee bond." Lilia claimed defendants had already distributed $1.8 million from the trust and sought to prevent defendants from distributing or transferring any more assets of the trust for any reason, including payment of attorney fees associated with the present litigation. The following day, the court issued a temporary stay on all distributions.

Lilia also filed a motion to remove Darryl Tocker as trustee and executor and to disqualify Robert as successor trustee and successor executor. Lilia argued Darryl failed to comply with the duties imposed upon him as trustee and executor and claimed Darryl had a conflict of interest by serving in many capacities. Lilia also argued Robert had a conflict of interest by virtue of his blood relationship to Darryl that should prevent him from succeeding Darryl as trustee and executor.

The district court held a joint hearing on Lilia's motions and received proposed findings of fact and conclusions of law from the parties. Regarding Lilia's motion for an injunction, the court found there was a threat to the ability of defendants and the court "to fully satisfy [Lilia's] share of marital assets, whether calculated on the basis of the Kansas Elective Share or on the basis of [Lilia's] tenancy-in-common interest based upon the postnuptial agreement," and given defendants' distributions to beneficiaries, payment of substantial expenses, and handling of the estate's tax re-

turns, continuing to allow defendants to control assets of the trust and estate could render the court's ultimate judgment ineffectual. Accordingly, the court ordered defendants "to refrain from making any distributions or transfer of trust assets, whether in the form of distributions to beneficiaries, payments for expenses, or otherwise, that would have the effect of diminishing or depleting the assets or income of the trust or the estate." Later in the journal entry, the court rephrased its ruling to prohibit distribution or transfer of trust *or estate* assets.

Regarding Lilia's motion to remove the trustee and executor and disqualify the successor trustee and successor executor, the district court identified Darryl Tocker's numerous roles in the litigation, including trustee of the trust, executor of Al's estate, beneficiary of both the trust and the will, expert witness, and tax preparer for both the trust and the estate. The court found "inherent conflicts of interest" associated with Darryl's various roles and determined he had failed to comply with the duties imposed by both the Uniform Trust Code, K.S.A. 2004 Supp. 58a-101 *et seq.*, and the Kansas Probate Code, K.S.A. 59-101 *et seq.* The court further found Lilia had standing to seek Darryl's removal as trustee and executor but also determined it had independent authority to remove and replace Darryl. Ultimately, the court ordered Darryl be removed and replaced as executor of the estate and as trustee of the trust.

Further, the district court acknowledged that the successor trustee, Robert Tocker, was Darryl Tocker's father, Al's brother, and father and grandfather to some of the named trust and estate beneficiaries. The court found these blood relationships created an "inherent conflict of interest," especially given the possibility that the successor trustee might be required to take a position adverse to Darryl. Accordingly, the court concluded Robert would not be allowed to serve as successor trustee or as successor executor. The court did not appoint a replacement executor or trustee, however. Instead, the court directed the parties to confer as to who the court should appoint.

This appeal was filed on August 11, 2004. In the notice, defendants expressed their intention to appeal, *inter alia*, the district court's grant of partial summary judgment, issuance of an injunc-

tion, and order to remove Darryl Tocker as trustee and executor and to disqualify Robert Tocker from serving as Darryl's successor. As discussed above, however, the defendants also separately filed an application for leave to take an interlocutory appeal of the district court's partial summary judgment decision, which was denied by this court.

### Jurisdiction to consider partial summary judgment

On appeal, defendants first argue the district court erred in granting Lilia's motion for partial summary judgment. Defendants challenge the court's construction of the antenuptial and postnuptial agreements, arguing the court erred in refusing to consider extrinsic evidence and in determining the income from or growth of Al's separate property constituted joint property subject to Lilia's interests and claims. According to defendants, proper construction of the agreements mandates a determination that the income from or growth of Al's separate property was, itself, separate property free from Lilia's reach. Defendants also contend partial summary judgment was inappropriate due to the existence of contested issues of material fact; namely, whether the parties' conduct subsequently modified the terms of the antenuptial and postnuptial agreements.

Preliminarily, we must determine whether this court has jurisdiction to review the district court's grant of partial summary judgment. Whether jurisdiction exists is a question of law over which an appellate court has unlimited review. *Mid-Continent Specialists, Inc. v. Capital Homes*, 279 Kan. 178, 185, 106 P.3d 483 (2005).

Appellate courts have only such appellate jurisdiction as is provided by law. *State v. Verge*, 272 Kan. 501, 521, 34 P.3d 449 (2001). Specifically, an appeal may be taken to this court as a matter of right from a final decision. K.S.A. 2004 Supp. 60-2102(a)(4). Clearly, the district court's grant of partial summary judgment was not a final decision. See *Investcorp v. Simpson Investment Co.*, 277 Kan. 445, 454, 85 P.3d 1140 (2003) (final decision disposes of entire merits of case and leaves no further questions or directions for further actions by court). Of course, interlocutory appeals are, at times, permitted. See K.S.A. 2004 Supp. 60-2102(c) (identifying

procedure for taking interlocutory appeal). Indeed, the district court indicated an interlocutory appeal of its decision granting partial summary judgment was appropriate and defendants filed an application with this court for an interlocutory appeal of the partial summary judgment decision. This court was vested with discretion to permit or deny defendants' application, however, and the motions panel of this court exercised that discretion in denying defendants' request. See K.S.A. 2004 Supp. 60-2102(c) (Court of Appeals may, in its discretion, permit interlocutory appeal).

Despite this court's rejection of their application for interlocutory appeal, defendants continue to urge this court to review the propriety of the district court's grant of partial summary judgment in this appeal. To this end, defendants assert the proper construction of the antenuptial and postnuptial agreements is a "dominant issue" and "inextricably intertwined with, and necessary to the resolution of" the orders that are appealable as a matter of right. Further, defendants claim resolution of this issue will render moot or resolve the remaining issues that are presently on appeal. Accordingly, defendants maintain this court has jurisdiction to review the order granting partial summary judgment pursuant to the principles of what defendants term "pendent appellate jurisdiction." In support of their arguments, defendants cite *Cypress Media, Inc. v. City of Overland Park*, 268 Kan. 407, 997 P.2d 681 (2000).

We believe our review of this issue is precluded under the law of the case doctrine. Under that doctrine, once an issue is decided by the court, it should not be relitigated or reconsidered unless it is clearly erroneous or would cause manifest injustice. *State v. Collier*, 263 Kan. 629, Syl. ¶¶ 2, 3, 952 P.2d 1326 (1998).

Moreover, we do not believe we have "pendent interlocutory jurisdiction" to review this concept as asserted by the defendants. As the *Cypress Media* court noted, there is a dearth of Kansas case law considering this concept. 268 Kan. at 415. Generally, pendent jurisdiction refers to "[a] court's jurisdiction to hear and determine a claim over which it would not otherwise have jurisdiction, because the claim arises from the same transaction or occurrence as another claim that is properly before the court." Black's Law Dictionary 870 (8th ed. 2004). Pendent jurisdiction, also known as

supplemental jurisdiction, typically involves a federal court's exercise of jurisdiction over state law claims brought within the same controversy. See Black's Law Dictionary 870-71 (8th ed. 2004) (providing example of pendent jurisdiction; defining supplemental jurisdiction).

The *Cypress Media* court applied this concept in ruling it had jurisdiction to consider an issue that was not otherwise properly before the court because it was "inextricably intertwined" with the issue that was properly before the court on interlocutory appeal. 268 Kan. at 415. Specifically, the district court had issued an order compelling defendant to give plaintiff unredacted copies of attorney fee billing statements due to defendant's failure to provide an adequate privilege log. The district court certified its ruling for interlocutory appeal, and this court granted defendant's application for an interlocutory appeal before transferring the case to the Supreme Court.

On appeal, defendant argued the Supreme Court also had jurisdiction to consider the district court's prior ruling that the billing statements were not per se privileged even though the district court had refused to certify that ruling for interlocutory appeal. According to defendant, the privilege issue was "inextricably intertwined" with the court's order to compel production, as that order was a reaction to defendant's continued claim that the billing records were privileged. The Supreme Court agreed, explaining "the broader per se privilege issue was at the heart of and inextricably intertwined with the privilege log issue which has the effect of resolving the ultimate issue in this case." 268 Kan at 415.

Notably, the procedural posture of *Cypress Media* varies from that of the present case. In *Cypress Media*, defendant's application for an interlocutory appeal was granted and defendant sought review of an additional issue which had not been certified for interlocutory review. In contrast, this appeal is before the court for resolution of issues from which defendants may appeal of right. See K.S.A. 2004 Supp. 60-2102(a)(2) (appeal may be taken as of right from order granting injunction); K.S.A. 2004 Supp. 59-2401(a)(2) (appeal may be taken from order removing fiduciary other than special administrator); and K.S.A. 2004 Supp. 59-102(3)

(defining "fiduciary" to include trustee). Here, defendants' application for interlocutory appeal of the district court's partial summary judgment ruling was denied.

Nor do we agree with defendants' suggestion that determination of the propriety of the district court's grant of partial summary judgment is "inextricably intertwined with, and necessary to the resolution of" the other issues properly before this court. Unlike *Cypress Media*, this court has the ability to conduct a meaningful review of the issues properly before the court without determining the propriety of the district court's grant of partial summary judgment. More specifically, the district court's actions in issuing an injunction and removing Darryl as executor and trustee are not inextricably intertwined with the court's determination that the income from, or growth of, Al's separate property during the marriage was joint property.

Further, unlike *Cypress Media*, review of the district court's grant of partial summary judgment would not have the effect of resolving the ultimate issue in this case. It bears repeating that the court's grant of partial summary judgment construed the antenuptial and postnuptial agreements with regard to only two issues: (1) whether growth of Al's separate property during the marriage constituted joint property, and (2) whether Lilia waived her right of election as to that property. Many issues remain in this controversy.

Kansas courts have a strong policy against piecemeal appeals. *Arnold v. Hewitt*, 32 Kan. App. 2d 500, 504, 85 P.3d 220 (2004). Moreover, the fact remains that the motions panel of this court has previously denied defendants' request for an interlocutory appeal of the district court's grant of partial summary judgment. Accordingly, we conclude we do not have jurisdiction to review the district court's grant of partial summary judgment.

### Issuance of injunction

Next, defendants challenge the district court's issuance of an injunction regarding expenditures of trust or estate assets.

As defendants correctly state, this court has jurisdiction to review the district court's issuance of an injunction pursuant to K.S.A.

2004 Supp. 60-2102(a)(2). The granting or denying of injunctive relief involves the exercise of judicial discretion. Consequently, we review the district court's decision utilizing the abuse of discretion standard. *General Building Contr., LLC v. Board of Shawnee County Comm'rs*, 275 Kan. 525, 541, 66 P.3d 873 (2003). Judicial discretion is abused only when no reasonable person would take the view adopted by the district court. *Varney Business Services, Inc. v. Pottroff*, 275 Kan. 20, 44, 59 P.3d 1003 (2002). On appeal, we will examine the record only to determine if any reasonable grounds support the district court's decision. See *Williams Natural Gas Co. v. Supra Energy, Inc.*, 261 Kan. 624, 631, 931 P.2d 7 (1997).

Lilia filed her motion for an injunction in reaction to a motion filed by defendants for permission to distribute trust income from 2003 totaling $254,217. Lilia noted defendants had already distributed over $1.8 million and questioned the veracity of defendants' repeated assertions to the district court that they would not distribute or transfer trust assets to an extent that would jeopardize their ability to satisfy a future judgment in favor of Lilia. Lilia also claimed defendants incurred and paid extraordinary expenses, including substantial attorney fees, and led the trust into a significant tax controversy. Ultimately, Lilia argued "defendants' mishandling and mismanagement of trust assets, contrary to their legal and fiduciary responsibilities and contrary to their repeated representations and assurances, has created a change of circumstances requiring immediate action to mitigate harm and to effectively manage the affairs of the Trust."

In ruling on Lilia's motion, the district court recalled that when it granted defendants' first request to distribute income in February 2003, it relied heavily on defendants' representation that income distributions would not jeopardize the trust's ability to satisfy a judgment. Additionally, the court noted that since Al's death, defendants had made expense distributions of $729,000 (including approximately $633,000 in legal fees) and distributions to beneficiaries in excess of $1.8 million. At the time of the court's ruling, the trust assets were valued at $2.5 million. Due to tax penalty exposure pending at the time, the corpus of the trust available to

satisfy a judgment in favor of Lilia was less than $1.9 million, yet Lilia's unsatisfied elective share was estimated to be between $2 million and $3 million.

The district court concluded Lilia had an interest in, and a right to, trust assets in an amount to be determined and, under the circumstances, there was a threat to the ability of the court and defendants to fully satisfy Lilia's share of marital assets. Accordingly, the court enjoined defendants from making any distributions or transfers of trust or estate assets.

On appeal defendants argue the district court failed to hold Lilia to the requisite legal standard for granting injunctive relief. As defendants correctly note, to obtain injunctive relief, a movant must establish:

" ' "(1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing parties; and (4) a showing that the injunction, if issued, would not be adverse to the public interest." [Citations omitted.]' " *General Building Contr., LLC*, 275 Kan. at 542.

Defendants claim Lilia failed to establish a substantial likelihood she will eventually prevail on the merits, proof the threatened injury to her outweighs whatever damage the injunction may cause defendants, and a showing the injunction would not be adverse to the public interest. According to defendants, the district court's issuance of an injunction based solely on Lilia's showing that she will suffer irreparable injury absent an injunction constituted an abuse of discretion.

In ruling on Lilia's motion for an injunction, the district court did not articulate the relevant criteria and tie specific findings thereto. Nevertheless, Lilia contends defendants' challenge to the application of the criteria for injunctive relief is belied by the court's detailed journal entry. A review of the totality of the court's findings, however, reveals the court's understanding of the criteria and its belief such were satisfied. For example, the court's very issuance of the injunction was based on the assumption Lilia would prevail on the merits of at least some of her claims. Indeed, the court previously determined Lilia had ownership interests in the

growth of Al's separate property, at least some of which was contained in the trust. Further, the court previously found Lilia had not waived her right to an elective share. Regarding the threatened injury to Lilia as compared with the damage an injunction may cause defendants, the court found the threat of harm to Lilia was significant; in contrast, the court did not identify any harm the injunction would cause defendants. This is not surprising since defendants' primary complaint—that the injunction impaired their ability to defend against Lilia's claims—was unsupported by evidence of harm. Moreover, defendants continue to be represented in the trial court and on appeal by the same counsel that represented defendants prior to the issuance of the injunction. Finally, the district court considered public policy and the fact that it supports the protection of a surviving spouse's property interests in situations involving an attempted disinheritance.

From a review of the district court's findings, as a whole, we conclude the district court applied the proper legal standard in granting the injunction.

Defendants further argue the district court's factual findings regarding the risk of defendants being unable to fully satisfy a judgment in favor of Lilia were not supported by substantial competent evidence. As discussed below, we cannot find that no reasonable person would take the view adopted by the trial court.

Preliminarily, defendants contend the district court's finding regarding the ability of defendants to pay a future judgment is not relevant to and does not justify an injunction prohibiting defendants from defending against Lilia's claims. This argument is unpersuasive in that there is no indication defendants have been prevented from mounting a defense. Rather, the risk that additional depletion of the trust and estate assets could prevent defendants from satisfying a judgment in Lilia's favor is relevant and does justify injunctive relief.

Next, defendants take issue with the court's finding of a "bona fide risk" to defendants' ability to pay a judgment, arguing more than a mere risk should be required before issuance of an injunction is warranted. Contrary to defendants' assertion, the establishment of a bona fide risk to defendants' ability to pay a judgment

satisfies the criteria set forth in *General Building Contr., LLC*, as such simply requires a " 'probable right' " to the injunctive relief sought and a " 'probable danger' " of irreparable injury if that injunctive relief is not granted. 275 Kan. at 542.

Defendants further challenge the evidence supporting the court's finding of a bona fide risk to their ability to pay. In support of this argument, defendants refer this court to evidence they presented to the district court indicating defendants would have a surplus of at least $1.4 million beyond any reasonable judgment that could be entered in Lilia's favor. In presenting this argument, defendants fail to note the district court disagreed with their calculations and determined, based on financial reports submitted by defendants and without taking into account future expenses, the corpus of the trust available to satisfy a judgment in favor of Lilia was less than $1.9 million, thus falling short of Lilia's estimated elective share of $2 million to $3 million. In doing so, the court rejected defendants' claim that they would have a cushion of over $1.4 million available to pay a future judgment, noting defendants' expert acknowledged on cross-examination that the accounting included expenses not yet paid. The court also pointed out other conflicting evidence submitted by defendants.

Essentially, defendants urge us to consider evidence that would support a contrary view; however, we are not in a position to reweigh conflicting evidence or pass on the credibility of witnesses. *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, 775, 69 P.3d 1087 (2003). Rather we are tasked with examining the record to determine if any reasonable grounds support the district court's decision to issue an injunction. See *Williams Natural Gas Co.*, 261 Kan. at 631. From a thorough review of the record, it appears defendants' prior actions in managing the trust left the district court with a justified concern about defendants' ability to satisfy a future judgment. Defendants had previously distributed substantial amounts of money, albeit with the district court's consent, and had already incurred significant legal fees and expenses. In 2004, the district court rejected defendants' request to distribute more income from the trust.

` Further, the evidence supports the district court's concerns regarding defendants' handling of the trust's taxes. In fact, at the time of the court's decision, an approximately $700,000 penalty was pending, although this tax penalty has since been abated by the Internal Revenue Service. Nevertheless, under the circumstances existing at the time, the court found it was proper "to take action that will, at least, maintain the status quo and to suspend any further unauthorized or unnecessary depletion of the trust and estate assets."

Thus, we find the district court did not abuse its discretion in issuing an injunction prohibiting defendants from distributing or transferring any assets of the trust or estate pending final adjudication of Lilia's claims.

### Removal of trustee/executor

Finally, defendants argue the district court erred in ordering the removal of Darryl Tocker as trustee and executor and in peremptorily disqualifying Robert Tocker as Darryl's successor. Specifically, defendants challenge Lilia's standing to seek Darryl's removal and question the district court's independent authority to remove him. Further, defendants contend the court's decision to remove Darryl and disqualify Robert was not supported by substantial competent evidence.

A preliminary matter must be addressed. Defendants acknowledge the district court has not yet removed Darryl as trustee and executor but, rather, has merely ordered that he shall be removed. To the extent this calls into question the finality of the order, defendants claim the collateral order doctrine provides this court with jurisdiction to proceed. As defendants state, this doctrine allows an appeal from a nonfinal decision where the order (1) conclusively determines the question in dispute, (2) resolves an important issue that is entirely separate from the merits of the case, and (3) is effectively unreviewable on appeal from a final judgment. *In re C.H.W.*, 26 Kan. App. 2d 413, 417, 988 P.2d 276 (1999).

According to the record on appeal, the district court, indeed, has not yet actually relieved Darryl of his duties. In fact, the district court has indicated it will not do so during the pendency of this

appeal. Nevertheless, we need not rely on the collateral order doctrine, as the districts court's decision to remove Darryl is final for jurisdictional purposes. Specifically, K.S.A. 2004 Supp. 59-2401(a)(2) allows an appeal as a matter of right from an order removing a fiduciary. A trustee is included in the definition of fiduciary. K.S.A. 2004 Supp. 59-102(3). The court's order stated Darryl "shall be removed and replaced as executor of the estate and as trustee of the trust" and Robert "shall not be allowed to serve as successor trustee or as successor executor." We therefore conclude the court's order is sufficient to confer jurisdiction on this court pursuant to K.S.A. 2004 Supp. 59-2401(a)(2).

*Standing*

Defendants argue Lilia lacked standing to seek the removal of Darryl as trustee because she was not a "qualified beneficiary" of the trust. As defendants point out, the Kansas Uniform Trust Code limits the individuals who may seek the removal of a trustee to the settlor, a cotrustee, or a "qualified beneficiary." K.S.A. 2004 Supp. 58a-706(a). It is undisputed Lilia is neither the settlor nor a cotrustee. A qualified beneficiary is a beneficiary who is a distributee of the trust income or principal. K.S.A. 2004 Supp. 58a-103(12). A beneficiary, in turn, is a person who "[h]as a present or future beneficial interest in a trust, vested or contingent," or holds a power of appointment over trust property in a nontrustee capacity. K.S.A. 2004 Supp. 58a-103(2). Applying these definitions, the district court found Lilia was both a beneficiary and qualified beneficiary.

Here, Lilia is not a named beneficiary in the trust. However, as Lilia notes and the district court determined, as Al's surviving spouse, Lilia is entitled to receive an elective share of his augmented estate. See K.S.A. 59-6a202 (prescribing surviving spouse's right to elective share of decedent's augmented estate); K.S.A. 59-6a203 (defining composition of augmented estate). Of course, the total contents of the augmented estate, as well as Lilia's share thereof, have yet to be determined. It appears, however, that Lilia stands to be a beneficiary of the trust by operation of Kansas law

or otherwise. Thus, we conclude the district court did not err in finding Lilia had standing to seek the removal of Darryl.

Even if Lilia lacked standing, the district court acknowledged it had independent authority to order the removal of Darryl as trustee and executor; defendants' arguments to the contrary are unpersuasive. K.S.A. 2004 Supp. 58a-706(a) provides a district court with authority to remove a trustee on its own initiative. Specifically, a court may remove a trustee if: (1) the trustee committed a breach of trust; (2) a cotrustee's lack of cooperation substantially impairs the trust's administration; (3) the trustee's unfitness, unwillingness, or persistent failure to administer the trust in an effective manner leads the court to determine removal of the trustee best serves the beneficiaries' interests and is consistent with the terms of the trust; or (4) a substantial change of circumstances leads the court to determine removal of the trustee best serves the beneficiaries' interests, is consistent with the terms of the trust and not inconsistent with a material purpose of the trust, and a suitable successor trustee or cotrustee is available. K.S.A. 2004 Supp. 58a-706(b).

Here, the district court found Darryl failed to comply with many of his duties as trustee and executor and, by virtue of his conflicts of interest and "demonstrated history of self-dealing," had become antagonistic toward the interests of both the estate and Lilia. Based on the application of these findings to K.S.A. 2004 Supp. 58a-706, the district court had independent authority to remove Darryl. Moreover, K.S.A. 59-1711 provides additional authority for the court's actions in removing Darryl as trustee and executor upon finding he failed to perform the duties imposed upon him by law.

*Evidence supporting removal*

Defendants take issue with particular findings of fact supporting the district court's decision to remove Darryl as trustee and executor, arguing those findings were not supported by substantial competent evidence. Among the findings with which defendants take issue are those dealing with a lack of a surplus and a bona fide risk to defendants' ability to pay a judgment.

A district court's decision to remove a trustee or executor is reviewed for abuse of discretion. See K.S.A. 59-1711 (identifying

circumstances in which fiduciary *may* be removed); *Jennings v. Murdock*, 220 Kan. 182, 211, 553 P.2d 846 (1976) (whether trustee should be removed is left to sound discretion of district court); *In re Estate of Stoskopf*, 24 Kan. App. 2d 851, 858, 954 P.2d 712, *rev. denied* 264 Kan. 821 (1998) (applying abuse of discretion standard of review to district court's removal of executor).

As previously noted, the district court made numerous findings regarding Darryl's failure to uphold his duties as trustee and executor. See, *e.g.*, K.S.A. 2004 Supp. 58a-801 *et seq.* (detailing duties of trustee). For example, the court found Darryl failed to administer the trust in an impartial manner as required by K.S.A. 2004 Supp. 58a-803. In the court's view, Darryl's numerous roles, including trustee, executor, tax preparer, expert witness, beneficiary, and family member to other beneficiaries, created a conflict of interest which impacted his ability to administer the trust in an impartial manner, thus placing the trust in jeopardy of being unable to satisfy a judgment in favor of Lilia. Defendants dispute the existence of a conflict of interest and contend Darryl's many roles were harmonious with each other and the provisions of the trust.

Additionally, defendants take issue with the court's determination that Darryl incurred "significant" expenses, arguing he had the right and duty, pursuant to K.S.A. 2004 Supp. 58a-811, to take reasonable steps both to enforce claims of the trust and to defend claims brought against the trust. Defendants also challenge the court's finding that Darryl's actions in handling the trust and estate were imprudent, contrary to the requirements of K.S.A. 2004 Supp. 58a-804. However, the district court squarely rejected defendants' assertion that Darryl's actions were reasonable and prudent. We may not reweigh the evidence. See *Morrison*, 275 Kan. at 775.

The removal of an executor is designed to protect the estate rather than punish the executor; such action must be predicated upon facts that are before the district court. *Stoskopf*, 24 Kan. App. 2d at 855. Here, the district court articulated numerous factual findings supporting its decision to remove Darryl as trustee and executor. Of note, the court found that continuing to allow Darryl to administer the estate would "likely result in prolonged and un-

necessary conflict, difficulty and expense." Under the circumstances, it appears the district court did not abuse its discretion in removing Darryl as executor. See 24 Kan. App. 2d at 856-57 (executor may be removed where his or her position is antagonistic toward interests of estate or heirs in such a way that continued administration of estate would probably result in prolonged and unnecessary difficulty or expense).

Therefore, we hold the district court did not abuse its discretion in ordering the removal of Darryl as trustee and executor.

### *Disqualification of successor executor/trustee*

Finally, defendants challenge the propriety of the district court's disqualification of Robert Tocker as successor executor and successor trustee, arguing the court's reasons for taking such action were insufficient under the law.

In peremptorily disqualifying Robert from succeeding Darryl, the court determined because of the "peculiar and abnormal facts," including Robert's blood relationship with Darryl and other beneficiaries, he should not be permitted to succeed Darryl as trustee or executor pending final adjudication of Lilia's claims. A primary factor in the court's decision was the real possibility the successor trustee and/or successor executor might be required to take a position adverse to Darryl. This concern was legitimate, as serious questions were raised regarding Darryl's handling of the trust and estate. Further, Robert was once a party to this litigation, and his service as trustee and/or executor could perpetuate the problems the court sought to cure by removing Darryl. Finally, it bears repeating that the court's ruling with respect to Robert only prohibits him from succeeding Darryl during the pendency of Lilia's claims.

Under the unique circumstances of this case, we hold the district court did not abuse its discretion in peremptorily disqualifying Robert Tocker from serving as successor trustee and successor executor pending resolution of this litigation.

In conclusion, we dismiss defendants' challenge to the district court's order granting partial summary judgment based upon our finding that this court lacks jurisdiction over that nonfinal decision. We affirm the district court's issuance of an injunction prohibiting

defendants from distributing or transferring any assets of the trust or estate pending final adjudication of Lilia's claims. And, finally, we affirm the district court's decision disqualifying Darryl Tocker to serve as trustee and executor and peremptorily disqualifying Robert Tocker to serve as successor trustee and executor, pending resolution of this litigation.

Appeal affirmed in part and dismissed in part.